**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT SCOTT,<br><br>               Plaintiff,<br><br>    v.<br><br>EMAGIN CORPORATION, ERIC BRADDOM, PAUL CRONSON, ELLEN RICHSTONE, ANDREW G. SCULLEY, STEPHEN M. SEAY, and JILL J. WITTELS,<br><br>               Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert Scott ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against eMagin Corporation ("eMagin" or the "Company") and the members of eMagin's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell eMagin to Samsung Display Co., Ltd. ("Samsung") (the "Proposed Transaction").

2. On May 17, 2023, eMagin entered into an Agreement and Plan of Merger with Samsung, Samsung's wholly owned subsidiary Emerald Intermediate, Inc. ("Silk USA") and Silk USA's wholly owned subsidiary Emerald Merger Sub, Inc. ("Merger Sub") (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Samsung will acquire eMagin for $2.08 in cash for each share of eMagin common stock.

3. On July 20, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that eMagin stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Nomura Securities International, Inc. ("Nomura"); and (iii) potential conflicts of interest faced by Nomura and Company insiders.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as eMagin stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for eMagin stockholders to vote on the Proposed Transaction is currently scheduled for August 31, 2023. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and eMagin' other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. eMagin's common stock trades on the NYSE American, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of shares of eMagin common stock.

10. Defendant eMagin is a Delaware corporation, with its principal executive offices located at 700 South Drive, Suite 201, Hopewell Junction, New York 12533. eMagin's shares trade on the NYSE American under the ticker symbol "EMAN."

11. Defendant Eric Braddom has been a director of the Company at all relevant times.

12. Defendant Paul Cronson has been a director of the Company at all relevant times.

13. Defendant Ellen Richstone has been a director of the Company at all relevant times.

14. Defendant Andrew G. Sculley has been Chief Executive Officer and a director of the Company at all relevant times.

15. Defendant Stephen M. Seay has been a director of the Company at all relevant times.

16. Defendant Jill J. Wittels has been Chair of the Board and a director of the Company at all relevant times.

17. Defendants identified in paragraphs 11-16 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

18. eMagin designs, develops, manufactures and markets organic light emitting diode ("OLED") miniature displays, which eMagin refers to as OLED-on-silicon microdisplays, virtual imaging products that utilize OLED microdisplays, and related products. eMagin also performs research in the OLED field. The Company is one of the leading U.S. producers of OLED microdisplays and manufactures its products at its facility located in the Hudson Valley of New York State. The Company's virtual imaging products integrate OLED technology with silicon chips to produce high-resolution microdisplays which, when viewed through a magnifying headset, create virtual images that appear comparable in size to that of a computer monitor or a large-screen television. eMagin's products enable its original equipment manufacturer ("OEM") customers in the military, consumer and commercial markets to develop and market improved or new electronic products. The Company considers itself a leader in display brightness and resolution due to its proprietary Direct Patterning Technology ("dPd"). Unlike traditional OLED microdisplays that produce colors by using a white source with filters that eliminate about 80% of

the emitted light, with dPd the Company makes full color displays by directly depositing each of the primary color materials on respective sub-pixels, without the use of filters.

**The Proposed Transaction**

19.     On May 17, 2023, eMagin announced that it had entered into the Proposed Transaction, stating, in relevant part:

> HOPEWELL JUNCTION, N.Y., May 17, 2023 (GLOBE NEWSWIRE) -- eMagin Corporation (NYSE American: EMAN) ("eMagin" or the "Company"), a U.S.-based leader in the development, design, and manufacture of Active-Matrix OLED microdisplays for high-resolution, AR/VR and other near-eye imaging products, today announced that the Company has entered into a definitive merger agreement with Samsung Display Co., Ltd. ("Samsung Display"), a subsidiary of Samsung Electronics Co., Ltd. (KRX: 005930) and manufacturer and distributor of display products. Under the terms of the agreement, all outstanding shares of eMagin common stock on a fully diluted basis will be acquired for $2.08 per share in cash, in a transaction valued at approximately $218 million.
>
> The purchase price represents a premium of approximately 10% to eMagin's closing stock price of $1.89 on May 16, 2023, and a premium of approximately 24% to eMagin's six-month volume-weighted average price of $1.68.
>
> "This agreement is a validation of our technical achievements to date including our proprietary direct patterning (dPd) technology, provides a significant premium for our shareholders, and represents a win for our customers and employees," said Andrew G. Sculley, eMagin's Chief Executive Officer. "By teaming with Samsung Display, we will be able to achieve the full potential of our next-generation microdisplay technology with a partner that can provide the resources and expertise we will need to scale production. Moreover, our customers will benefit from resulting improvements to our production capabilities in terms of yield, efficiency, and quality control."
>
> President & Chief Executive Officer of Samsung Display, Joo Sun Choi, emphasized the strategic significance of the acquisition, stating, "We expect XR (Extended Reality) devices to have significant potential of growth in the future, and eMagin's technology in this space will enable Samsung to offer innovative products to more customers and strengthen its XR-related business."
>
> Following the closing of the transaction, eMagin will continue to maintain its operations and facilities in Hopewell Junction, NY.
>
> **Approvals and Timing**

eMagin's Board of Directors has unanimously approved the transaction and is recommending that eMagin's stockholders approve the transaction and adopt the merger agreement at a special meeting of stockholders to be called in connection with the transaction. Certain of eMagin's stockholders who collectively hold approximately 98% of the total voting power of eMagin's Series B Convertible Preferred Stock, which is convertible into approximately 21% of the total voting power of eMagin's common stock on a fully diluted basis, have entered into a support agreement pursuant to which they have committed to vote such shares in favor of the transaction.

The transaction is expected to close in the second half of 2023, subject to the approval by eMagin's stockholders, applicable regulatory approvals and other customary closing conditions. Until closing, eMagin and Samsung Display remain separate and independent companies.

**Advisors**

Nomura Securities International, Inc. is serving as exclusive financial advisor to eMagin. White & Case LLP and Goodwin Procter LLP are acting as the Company's legal counsel. Evercore Inc. is serving as exclusive financial advisor to Samsung Display and O'Melveny & Myers LLP is acting as legal counsel.

**The Materially Incomplete and Misleading Proxy Statement**

20. On July 20, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that eMagin stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Nomura; and (iii) potential conflicts of interest faced by Nomura and Company insiders.

*Material Misrepresentations and/or Omissions Concerning eMagin's Financial Projections*

21. The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

22. For example, the Proxy Statement sets forth that on November 7, 2022:

> Company Management spoke via telephone with Nomura to discuss the financial information prepared by Company Management and included in the presentation, which included (i) a "base case" forecast ("**Base Case Forecast**"), (ii) an illustrative case forecast assuming additional revenues and profits in the future from licensing the Company's dPd and WOLED+CF technology (the "**Illustrative Upside Case Forecast**") and (iii) an analysis, from the perspective of a potential acquirer or strategic manufacturing partner, of the Company's technologies (the "**Mass Manufacturing Contribution Analysis**").

Proxy Statement at 38 (emphasis in original). Then on November 18, 2022, the Board approved the Base Case Forecast, Illustrative Upside Case Forecast, and Mass Manufacturing Contribution Analysis "and directed Nomura to use the Base Case Forecast for the preparation of its preliminary financial analyses." *Id*. at 39. Yet, the Proxy Statement fails to disclose: (i) when the Board approved the Base Case Forecast for Nomura's use in connection with rendering its fairness opinion; and (ii) whether any revisions were made to the Base Case Forecast between November 7, 2022 and May 16, 2023, the date the Board approved the Merger Agreement and Nomura rendered its fairness opinion, and if so, a summary thereof.

23.     Additionally, the Proxy Statement sets forth that on November 29, 2022, Company management and Nomura held a presentation with Samsung which "included: (a) a backlog summary, (b) a pipeline summary and (c) a cash flow analysis and liquidity overview." *Id.* The Proxy Statement, however, fails to disclose a summary of this "cash flow analysis and liquidity overview" provided to Samsung.

24.     With respect to the Company's "Base Case Forecast" and "Illustrative Upside Case Forecast," the Proxy Statement fails to disclose all line items underlying: (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow (Burdened by Stock Based Compensation).

25.     Moreover, with respect to the Company's "Mass Manufacturing Contribution Analysis" forecast, the Proxy Statement fails to disclose the projected segment revenue for each of the Company's dPd and WOLED+CF technologies.

*Material Misrepresentations and/or Omissions Concerning Nomura's Financial Analyses*

26. The Proxy Statement fails to disclose material information concerning Nomura's financial analyses.

27. With respect to Nomura's *Discounted Cash Flow Analysis—Base Case*, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; and (ii) the inputs and assumptions underlying the discount rates ranging from 11.7% to 13.7%.

28. With respect to Nomura's *Discounted Cash Flow Analysis—Illustrative Upside Case*, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; and (ii) the inputs and assumptions underlying the discount rates ranging from 10.7% to 14.7%.

29. With respect to Nomura' *Analysis of Implied Premia*, the Proxy Statement fails to disclose: (i) the identities of the transactions observed; and (ii) the individual premiums observed for each transaction.

*Material Misrepresentations and/or Omissions Concerning Nomura's and Company Insiders' Potential Conflicts of Interest*

30. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Nomura.

31. Specifically, the Proxy Statement fails to disclose the details of any services Nomura provided to Stillwater Holdings LLC, MDAS 2012 Children's Trust and Ginola Limited (collectively, the "Supporting Stockholders"),[1] or their respective affiliates, in the two-year period

---

[1] The Merger Agreement requires the approval of (i) the holders of a majority of the voting power of the outstanding shares of Company common stock and Company Series B Convertible Preferred Stock, voting together as a single class on an as-converted to Company common stock basis, and (ii) an affirmative vote or consent of the holders of a majority of the outstanding shares of Company Series B Convertible Preferred Stock. The Supporting Stockholders have agreed to vote 3,764,931 shares of Company common stock and 5,236 shares of Company Series B Convertible Preferred Stock, convertible into 17,326,274 shares of Company common stock, in favor of the Merger Agreement, which represents approximately 97.8% of the total voting power of the

preceding its fairness opinion on the Proposed Transaction, and any related compensation received by Nomura.

32. The Proxy Statement also fails to disclose material information concerning potential conflicts of interest faced by Company insiders.

33. Specifically, the Proxy Statement fails to disclose whether any members of Company management have secured, or are expected to secure, positions with the post-close company. Notably, according to the Proxy Statement, on April 19, 2023, "[t]he parties discussed the importance of employee retention for operating the Company's business, but [Samsung] did not make any proposals for director, officer or management involvement post-closing prior to signing the Merger Agreement." *Id.* at 44. Yet, the Proxy Statement fails to disclose whether any discussions regarding employee retention have occurred following execution of the Merger Agreement, and the details of all such communications.

34. In sum, the omission of the above-referenced information renders statements in the "Certain Financial Projections," "Opinion of Nomura," "Background of the Merger," and "Interests of the Company's Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of eMagin will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

---

outstanding shares of Company Series B Convertible Preferred Stock and sufficient to constitute an affirmative vote of the holders of a majority of the outstanding shares of Company Series B Convertible Preferred Stock, and approximately 20.9% of the total voting power of the outstanding shares of Company common stock and Company Series B Convertible Preferred Stock.

9

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and eMagin**

35. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

36. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  eMagin is liable as the issuer of these statements.

37. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

38. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

39. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

40. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

41. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

42. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of eMagin within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of eMagin and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

47. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of eMagin, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: August 9, 2023                  **ACOCELLI LAW, PLLC**

By   */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*